IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**Tina M.,**[1]

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

**Civ. No. 6:19-cv-01324-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Tina M. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to credit Plaintiff's testimony; (2) failing to credit medical opinions; and (3) failing to credit lay witness statements. Pl.'s Br. 5–27, ECF No. 19. Because there is substantial evidence in the record to support the ALJ's findings and any errors are harmless, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

Plaintiff applied for DIB and SSI on December 29, 2015, alleging disability since December 4, 2013. Tr. 13, 228–42. Her claim was denied initially and upon reconsideration. Tr. 131, 136, 140, 143. Plaintiff timely requested a hearing before an ALJ and appeared pro se before the Honorable Ted Neiswanger on March 22, 2018. Tr. 146, 60. The hearing was continued to give Plaintiff an opportunity to seek representation. Tr. 60–74. With counsel, Plaintiff appeared before the Honorable Katherine Weatherly on August 15, 2018. Tr. 33–59. At the hearing, Plaintiff amended her alleged onset date of disability to June 4, 2015, the date when she stopped working at substantial gainful activity level.[2] Tr. 36. ALJ Weatherly denied Plaintiff's claim by a written decision dated September 7, 2018. Tr. 13–26. Plaintiff sought review from the Appeals Council and was denied on June 19, 2019, rendering the ALJ's decision final. Tr. 226, 1–6. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 49 years old at the time of her amended alleged disability onset and 52 years old at the time of her hearing. *See* tr. 86. Plaintiff has a GED and trained to be a dental assistant. Tr. 283. Plaintiff has worked as a receptionist, dental assistant, retail store manager, sales clerk, and home furnishings salesperson. Tr. 24. Plaintiff alleges disability due to PTSD, fibromyalgia, and arthritis. Tr. 281.

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir.

---

[2] ALJ Weatherly acknowledged Plaintiff's amendment to her alleged onset date, but mistakenly gave the date of December 4, 2013, Plaintiff's original alleged onset date, in her decision.

2 – OPINION AND ORDER

2004); *Ahearn v. Saul*, No. 19-35774, 2021 WL 609825, at *1, (9th Cir. Feb. 17, 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

**I.     Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to identify specific, clear and convincing reasons to reject Plaintiff's subjective symptom testimony. An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040.

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a

negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's statements regarding the intensity, persistence and limiting effects of her conditions were not consistent with the medical and other evidence in the record. Tr. 19. The ALJ explicitly considered Plaintiff's daily activities, her treatments of the symptoms, her compliance with the treatment plan, and whether the alleged limitations were consistent with the medical evidence. Tr. 20–21. The ALJ gave at least five reasons for discounting Plaintiff's statements regarding the limiting effects of her conditions. Plaintiff's statements were inconsistent with her level of activity. Tr. 19–20. Plaintiff was looking for work during the relevant period and took steps toward opening her own business. Tr. 19. Plaintiff received minimal treatment of her conditions. Tr. 20. Plaintiff was not compliant with her treatment plans. Tr. 21. And Plaintiff's treatment records did not support her alleged symptoms. Tr. 21.

Plaintiff's description of her physical and mental limitations is contradicted by her active lifestyle. A claimant's daily activities may be grounds for an adverse credibility finding if she "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th

Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Plaintiff alleges she must lay down and ice her back five or more times a day, for twenty to thirty minutes each time. Tr. 43–44. She alleges she can only sit or stand for "five or ten minutes, max." Tr. 45. She alleges she can only walk for ten minutes. Tr. 45. Plaintiff cares for herself, her home, and her dog. Tr. 292. She runs errands with her friend for two to three hours at a time. Tr. 314. Plaintiff moved several times in 2016. Tr. 829, 834, 843. During one of those moves, she rehabilitated her home. Tr. 463. Plaintiff spent two weeks caring for her mother and her mother's house because she felt the care her mother was receiving was below standard. Tr. 848. Plaintiff's level of physical activity does not support her statements regarding the severity of her symptoms.

Plaintiff alleges that her anxiety is so severe that she is "unable to function outside [her] home many days a week." Tr. 289. She "panic[s] at the thought of a social situation." Tr. 289. Plaintiff has her adult children and friends over for dinner regularly. Tr. 315. She attends weekly yoga and massage therapy. Tr. 293. She attends a weekly motorcycle group. Tr. 315. She took art, business, and math classes at a community college. Tr. 51. Classes met twice per week. Tr. 51. In 2017, she spent a weekend at a gluten-free convention in Portland. Tr. 871. She began art therapy in 2018. Tr. 888. These social activities are inconsistent with Plaintiff's claim that her anxiety prevents her from leaving the house.

Plaintiff's own actions undermine her position that she has been disabled and unable to work since 2015. In December 2015, Plaintiff was working on building an essential oils

business. Tr. 794. Plaintiff received unemployment insurance income through February 2016. Tr 243–44. In October 2016, Plaintiff was considering opening a daycare. Tr. 854. Plaintiff spent 2017 focused on opening a gluten-free bakery. Tr. 861, 870, 871. She attended classes to develop a business plan and hired a commercial realtor. Tr. 861, 971. She actively looked at potential spaces for the bakery. Tr. 870. She spent a weekend attending a gluten-free convention in Portland. Tr. 871. She was making plans to remodel her home in 2018. Tr. 890. Plaintiff's actions suggest she believed herself capable of working.

Plaintiff's conservative treatment of her conditions and her noncompliance with medical recommendations also weigh against her symptoms being as severe as she maintains. An ALJ may consider minimal or inconsistent treatment in evaluating claimant credibility. *Burch*, 400 F. 3d at 381. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F. 3d 1428, 1434 (9th. Cir. 1995)). Similarly, "fail[ure] to follow prescribed treatment that might improve symptoms" may be evidence that the symptoms are not as severe as alleged. SSR 16-3p, 2017 WL 5180304. Plaintiff reports that she has tried many medications for her fibromyalgia, but nothing seems to help. Tr. 295. She instead relies on yoga and massage therapy and ibuprofen. Tr. 296, 521, 730–31. Plaintiff has expressed a desire not to take strong medications and has declined more serious interventions. Tr 450–52. Dr Lake noted that Plaintiff had a fear of pills. Tr. 381. Dr. Lamoreaux recommended that Plaintiff do intraarticular injections to treat her shoulder injury. Tr. 436. Plaintiff opted not to do the injections. Tr. 443. Dr. Lamoreaux also suggested a manipulation, but Plaintiff did not want to take drugs to do it, so it was not possible. Tr. 444. Dr. Lamoreaux's notes state that Plaintiff has

progressed with physical therapy and "does not wish any other intervention." Tr. 450. Dr. Lamoreaux also notes that Plaintiff was averse to trying new medication to help with pain or with sleep and "wants to limit stronger meds that are used for pain." Tr. 451–52. Plaintiff has declined more aggressive medications and treatments and has repeatedly stated a desire to treat her symptoms with yoga, massage therapy, and ibuprofen. This suggests that her symptoms are not as severe as alleged.

Finally, Plaintiff's mental health dysfunction is not supported by objective medical evidence. Plaintiff alleges she needs helps remembering "almost everything." Tr. 47. She has trouble focusing on just one thing. Tr. 47. She sometimes has trouble understanding instructions. Tr. 42. The objective medical examinations do not support this degree of impairment. Plaintiff's medical records show, at most, mild memory and concentration issues. *See, e.g.,* tr. 382–83, 739–42, 751, 1234.

The ALJ provided five specific clear and convincing reasons, each supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

## II.   Medical Opinions

Plaintiff argues the ALJ failed to identify legally sufficient bases supported by substantial evidence in discounting the medical opinions of Scott Alvord, PsyD., and Claudia Lake, PsyD. An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6). "To

reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* Dr. Alvord's and Dr. Lake's opinions are contradicted. Def.'s Br. 5, ECF No. 20. Therefore, the ALJ needed to provide specific and legitimate reasons supported by substantial evidence to properly reject their opinions. *See Bayliss*, 427 F. 3d at 1216 (citation omitted).

### A. Dr. Alvord

Dr. Alvord examined Plaintiff in July 2018. Tr. 1228–46. At the end of his report, Dr. Alvord opined that Plaintiff would be off task for 10% of a workday and would miss three to four days a month. Tr. 1236. In examining Plaintiff, Dr. Alvord found she cares for herself normally, runs errands, has social support, and was adequately dressed and groomed. Tr. 1230. Dr. Alvord's examination showed Plaintiff had normal attention and concentration, normal insight and judgment, normal though content, and normal speech. Tr. 1230–31. Plaintiff was minimally anxious with a euthymic mood. Tr.1230. Dr. Alvord found that Plaintiff's long-term, short-term, and immediate working memory were intact. Tr. 1230. Dr. Alvord found Plaintiff would have mild to moderate limitations with complex instructions and working with others. Tr. 1234.

The ALJ assigned no weight to Dr. Alvord's opinion. Tr. 23. The ALJ found that Dr. Alvord's opinion that Plaintiff would be off task for 10% of a workday and would miss three to

four days a month was contradicted by his finding that Plaintiff had only mild to moderate limitations in any of the ten major functioning areas. Tr. 23. The ALJ also found that Dr. Alvord's opinion was contradicted by his objective examination findings. Tr. 23.

Plaintiff argues that Dr. Alvord's finding that Plaintiff had moderate impairment in processing and carrying out complex instructions, interacting with coworkers and supervisors, and responding appropriately to situations and changes in work setting supports his opinion. Pl.'s Br. 8–9. The form used by Dr. Alvord defines moderate impairment as "more than a slight limitation in this area but the individual is still able to function satisfactorily." Tr. 1233. Although Dr. Alvord's findings suggest that Plaintiff could "function satisfactorily" with complex instructions and interactions with coworkers, the ALJ still accounted for the moderate impairments in the RFC, limiting work to simple, routine, repetitive tasks with no more than occasional contact with coworkers. Tr. 18. Per Dr. Alvord's opinion, Plaintiff has no impairment when it comes to understanding, remembering, and carrying out simple instructions. Tr. 1234. Dr. Alvord's objective examination found Plaintiff had intact memory, normal concentration, adequate abstract thinking, and adequate insight and judgment. These findings do not support Dr. Alvord's opinion that Plaintiff would be off task for 10% of a workday and would miss three to four days a month. The ALJ reasonably discounted Dr. Alvord's opinion because of these internal inconsistencies. The ALJ provided two specific and legitimate reasons for discounting Dr. Alvord's opinion, both supported by substantial evidence.

**B.  Dr. Lake**

Dr. Lake met with Plaintiff one time, on April 6, 2015. Plaintiff drove herself to the appointment and was 25 minutes early. Tr. 380. Plaintiff reported a fear of pills and that she was

not taking any medication. Tr. 381. Dr. Lake's examination found Plaintiff had normal concentration with "no evidence of distractability," intact and goal-focused thought process, and mildly euthymic mood. Tr. 382. Plaintiff had mild memory issues with immediate and remote recall. Tr. 382–83. Dr. Lake opined that Plaintiff could perform simple tasks and accept simple instructions. Tr. 384. She opined that Plaintiff "is able to perform work, but may require additional instruction and reminders." Tr. 384. Plaintiff's memory issues "may require ongoing monitoring" and "may affect her ability to do more complex tasks." Tr. 384. Dr. Lake opined that Plaintiff is able to maintain regular attendance at work. Tr. 384. Plaintiff's maladaptive behaviors due to her fears and anxieties "may interfere with relationships, memory, and other work-related activities." Tr. 384. Dr. Lake opined that Plaintiff could handle only minimal stress in the workplace. Tr. 384.

The ALJ assigned some weight to the opinion of Dr. Lake. The ALJ found that some of Dr. Lake's opinion was not useful for crafting a RFC, but rather described "functional impairments" that could be accommodated by minimum coworker contact and simple, routine, repetitive tasks. Tr. 22. The ALJ accepted the parts of Dr. Lake's opinion that could be translated to an RFC. Dr. Lake's remaining statements were equivocal and did not discuss actual limitations, but rather potentialities. The ALJ identified a specific and legitimate reason, backed by substantial evidence, for only granting some weight to Dr. Lake's opinion.

### III. Other medical opinions

Plaintiff argues that the ALJ failed to identify germane bases supported by substantial evidence in discounting the opinions of Megan Barckert, NP, and Zanne Miller, QMHP. As a nurse practitioner and qualified mental health professional, NP Barckert's and Ms. Miller's

opinions are considered "other" medical source statements under the regulations that applied in this case. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ must provide a germane basis for discounting "other" medical source statements. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

### A. NP Barckert

NP Barckert became Plaintiff's primary care provider in 2018 and saw her four times between April 6, 2018 and June 20, 2018. Tr. 729. She diagnosed Plaintiff with fibromyalgia, chronic pain syndrome, PTSD, insomnia, degenerative disc disease of the cervical spine, anxiety, and depression. Tr. 729. She noted that Plaintiff was no longer taking any of her previously prescribed medications, due to side effects and inefficacy, and was only taking ibuprofen. Tr. 731. NP Barckert opined Plaintiff would need daily unscheduled breaks of up to thirty minutes in an eight-hour workday. Tr. 731. She opined Plaintiff would not be capable of medium, light, or sedentary work. Tr. 731–32. She further opined Plaintiff would experience excessive absences caused by exacerbation of her medical condition, more than four days a month. Tr. 732–33. NP Barckert also performed a Fibromyalgia Residual Functional Capacity Assessment. Tr. 734–38. Plaintiff meets the American College of Rheumatology criteria for fibromyalgia. Tr. 734. She has 18/18 tender points. Tr. 734. Her bloodwork to rule out other potential causes came back normal. Tr. 734. NP Barckert opined that Plaintiff could walk less than 100 feet without severe pain and less than 1000 feet without resting. Tr. 736. NP Barckert opined that Plaintiff could sit for only ten minutes at a time and stand for only fifteen minutes at a time. Tr. 736.

The ALJ assigned no weight to the opinion of NP Barckert because she only saw Plaintiff three times and her capacity estimates were "wildly inconsistent" with Plaintiff's behavior. Tr.

23. The ALJ found these capacity estimates especially inconsistent with Plaintiff's working at close to substantial gainful activity level in 2015. Tr. 23.

Plaintiff argues that the ALJ mischaracterizes NP Barckert's opinion, including the diagnosis of fibromyalgia and the capacity estimates. Pl's Br. 19–22. NP Barckert saw Plaintiff four times, not three, before evaluating her functional limitations. NP Barckert diagnosed Plaintiff with fibromyalgia based on 18/18 tender points and normal lab results otherwise, meeting the ACR criteria. The ALJ recognized that Plaintiff's "objective physical examination results… were almost completely negative, with the exception of 18/18 tender points" but reasoned that this was evidence that Plaintiff's symptoms were not as severe as alleged. Tr. 21. Fibromyalgia is medically determinable when "there is a history of widespread pain in all quadrants of the body," there are "at least 11 of 18 possible tender points," and "there is evidence that other disorders were excluded as possible causes of the pain." SSR 12-2p, 2012 WL 3104869. The ALJ failed to appreciate the significance of NP Barckert's findings; NP Barckert's examination found Plaintiff meets the criteria for fibromyalgia. The ALJ also took issue with NP Barckert's estimation that Plaintiff could walk less than 100 feet, but ignored the qualifier "without severe pain." Tr. 23. NP Barckert actually estimated Plaintiff could walk 1000 feet without resting. Finally, the ALJ compared Plaintiff's limitations in 2018 to Plaintiff's activity level in 2015, without taking into account how symptoms can worsen over time.

To the extent the ALJ erred by mischaracterizing NP Barckert's opinion of Plaintiff's diagnosis and limitations, such error was harmless. Substantial evidence supports the ALJ's finding that NP Barckert's estimation of Plaintiff's limitations was contradicted by Plaintiff's activity level. As discussed above, Plaintiff leads an active lifestyle, attending yoga, massage

therapy, and motorcycle group meeting weekly. She takes classes at a local community college. She runs errands for two to three hours at a time. She rehabilitated her house. She cares for her home and took time to care for her mother's home. This level of activity does not support the severe limitations given in NP Barckert's opinion.

B. **Ms. Miller**[3]

Ms. Miller saw Plaintiff regularly for counseling in 2018. Tr. 1220. In the questionnaire provided, when asked about Plaintiff's limitations in a work setting, Ms. Miller replied "Given the short duration of our work together, I don't feel qualified to answer this question." Tr. 1221. Ms. Miller also felt she was unqualified to answer questions regarding Plaintiff's ability to maintain concentration during a workday. Tr. 1226. Ms. Miller did note that Plaintiff has mild limitations when it comes to understanding and remembering both simple and complex instructions, as well as with the ability to interact with the public and coworkers. Tr. 1224–25. Ms. Miller opined Plaintiff would miss more than four work days a month. Tr. 1226. Ms. Miller's assessments were based solely on Plaintiff's self-report. Tr. 1224–25.

The ALJ assigned no weight to Ms. Miller's opinion, due to her short-term relationship with Plaintiff, Ms. Miller's own statements regarding being unqualified, and the fact that her opinion was based only on Plaintiff's self-reporting. Tr. 23. In her questionnaire, Ms. Miller noted twice that she was not qualified to answer the questions due to her short-term relationship with Plaintiff. Further, because Ms. Miller's opinion was based solely on Plaintiff's self-report, the ALJ's reasoning in discounting Plaintiff's subjective symptom testimony applies here. *Fair*,

---

[3] In her decision, the ALJ misadvertently refers to Plaintiff's counselor as Katie Taylor, the name of Plaintiff's attorney. It is clear from context and quotations that the ALJ is referring to Zanne Miller here.

885 F.3d at 605 (9th Cir. 1989). The ALJ identified germane bases supported by substantial evidence to reject Ms. Miller's opinion.

**IV.     Lay witness statements**

Plaintiff argues that the ALJ failed to give germane bases for rejecting lay witness statements. Pl.'s Br. 25. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511 (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members." (citation omitted)). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Sharon C. is a long-time friend of Plaintiff who sees her multiple times a week. Tr. 311, 376. Sharon C.'s two reports paint a picture of Plaintiff as someone who has changed significantly, but still has an active social life, despite assertions to the contrary. Sharon C. describes Plaintiff as having a lot of anxiety and fear of the unknown and strangers. Tr. 317–18, 376. Sharon C. reports that Plaintiff does household chores and laundry daily and prepares her own simple meals. Tr. 313. She reports that Plaintiff has some struggles with personal care, related to her shoulder pain. Tr. 312. Plaintiff cares for her dog, feeding and walking him, and

relies on others to walk him when she is having a bad day. Tr. 312. Plaintiff and Sharon C. run errands together for two to three hours at a time. Tr. 314. She reports Plaintiff can walk two city blocks at a time and then needs to rest for just a few minutes. Tr. 316. Sharon C. also reports Plaintiff can pay attention and follow written instructions well, so long as she is not under stress, but that spoken instructions often must be repeated. Tr. 316. She reports that Plaintiff seems especially anxious in a car. Tr. 377. She also reports that, in addition to having her friends and adult children over for dinner regularly, Plaintiff attends weekly yoga classes and a motorcycle group. Tr. 317–18, 315.

Curt B., Plaintiff's roommate, also completed a written statement. Tr. 378. He also reports that Plaintiff has become less social. Tr. 378. He reports that Plaintiff struggles with washing and brushing her hair because of the pain. Tr. 378. He also reports that Plaintiff has difficulty sweeping and mopping. Tr. 378. Finally, he reports that Plaintiff's anxiety in a car was so bad at times that he would have to stop and pull over. Tr. 378.

The ALJ granted some weight to lay witness statements of Sharon R. and Curt B., but less weight than the medical professionals. Tr. 23. The ALJ acknowledged that lay witnesses were in a good position to observe Plaintiff's functioning over time, but maintained that medical opinions were based on objective evidence and reflected their professional expertise. Tr. 23. Plaintiff argues this is not a germane basis to reject lay witness testimony. Pl.'s Br. 27. To the extent this is true, the ALJ also noted inconsistency in lay witness testimony regarding Plaintiff's limitations in a car and Plaintiff's own admission that she still drives. Tr. 23. Although Plaintiff may prefer not to drive, she still drives herself when necessary. *See, e.g.*, tr. 380. Further, the ALJ did not discount or reject the lay witness statements entirely, just to the extent they were

inconsistent with medical opinions and Plaintiff's own admissions. *Cf*. Molina, 674 F.3d at 1111 (noting that statements from "'other sources' are not entitled to the same deference" as medical opinions). To the extent the ALJ erred by failing to provide a germane basis for granting less weight to lay witness statements, such error is harmless. *See id*. at 1117 ("[T]he ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the law witness testimony.").

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 8th day of March, 2021.

s/ Michael J. McShane
Michael J. McShane
United States District Judge
